Good morning, ladies and gentlemen. Judge Rovner cannot attend today's oral arguments, but she has read the briefs and will listen to the arguments, after which she will participate in the decisions. Our first case for argument this morning is East Gate-Logistics Park v. CenterPoint Properties Trust. Mr. Palmesham. Good morning. May it please the Court. This case arises out of defendants' attempt to maintain a century-long monopoly over the commercial warehouse space servicing the Joliet Intermodal Zone, which is the nation's largest inland port through which 4 percent of the country's gross domestic product passes. Three issues are before this Court today. Whether the District Court erred by granting the defendants' motion to stay the case under the Colorado River Doctrine. Second, whether the District Court erred by denying the defendants' Rooker-Feldman motion to dismiss plaintiff's claims for injunctive and declaratory relief. And lastly, whether some or all of plaintiff's claims are barred by the North Pennington Doctrine. I think you've left out the first logical question, antecedent to everything. Do we have appellate jurisdiction in this case? I believe you do, Your Honor. And why? Let me tell you my problem. Sure. This case appears to be not over in the District Court. The District Judge has said that after the state litigation is through, she will take up the antitrust claim. Of course, there may be an outcome of the state case that will make the antitrust claim go away. And if there isn't, the District Judge will take it up. That means this case is not done in the District Court. So how can there be an appeal? Well, two points, Your Honor. One, we took an appeal from the District Court's stay under Colorado River Doctrine. If you could raise your voice. That microphone doesn't amplify, and this is a very big room. Yes, Your Honor. We took an appeal from the District Court's stay of the case. So I believe that's why. That's why we're here. But it's accepted doctrine that a simple stay is not an appealable order. I am referring to, among other things, Quackenbush against all state in the Supreme Court at Volume 517 of the U.S. Reports, something that neither side has discussed. That's correct, Your Honor. How can a simple stay, in deference to the state decision, be appealable? Quackenbush says a simple stay is not appealable. Your Honor, since neither parties have addressed that issue, I cannot answer that question. What I will say, Your Honor, though, is given the circumstances, given the case where we had moved for a preliminary injunction, and the court did not hear that motion of preliminary injunction, instead staying the entire case. And so I believe that we have grounds for this court to hear this appeal. If I may turn to the Colorado River Doctrine. Your Honor, it is the first duty to discuss appellate jurisdiction. Your brief cites only one decision, and it's a decision that appeals from an order that the federal court is not going to hear your case. Well, we don't have an order here that the federal court isn't going to hear your case. Right? It's a completely different kind of thing. One might doubt that Colorado River is the right rubric, as opposed to a simple stay in deference to an earlier filed state case. And it is canonical that those kinds of stays are not appealable. I don't think we can just ignore this and move to the merits. And, Your Honor, if that is the case, then the case should be remanded back to the district court with instructions to proceed on the motion. We can't amend something when we don't have jurisdiction. Right? Understood, Your Honor. If it's just a stay, where's the jurisdiction? I don't think you're grappling with the basic problem. Again, Your Honor, our position and the defendant's seem to be in agreement on this, since they have not raised the issue. You cannot agree on matters of jurisdiction. Understood, Your Honor. If I may address the Colorado River. Well, you can proceed, but we will be directing the parties to file supplemental briefs on this subject. As to the Colorado River argument, Your Honor, under this court's decisions in Medina and Atkins, the district court had no authority to abstain under Colorado River based on the presence of exclusively federal Sherman Act claims. Let me try again. These things are all wrapped up. I don't understand what all this Colorado River stuff is about. In a Colorado River case, the case is never coming back to federal court. State court has exclusive jurisdiction. The district court did not find that the state court had exclusive jurisdiction about anything. The district court said, I've got exclusive jurisdiction of the antitrust claim, and I will decide it eventually. So we don't have a Colorado River situation at all. What you need to address is whether the district court, assuming we have jurisdiction, whether the district court abused its discretion in saying that it would wait to see what happens in the state case. And I believe, Your Honor, that the argument remains largely the same, that the district court had no authority to The Colorado River abstention and a stay in favor of pending litigation are conceptually, utterly distinct. They're not largely the same, not remotely. Your Honor, if I may proceed. You may proceed, but if you're thinking about this as Colorado River abstention, you aren't going to be able to make a plausible argument because it isn't Colorado River abstention. And then I would agree with Your Honor that the district court erred by saying that it was Colorado River abstention.  I said the district court, there may have been a misnomer in the district court. But the district court, in the last three pages of its opinion, traipsing through multiple factors about the propriety of stays, and it does seem to me you need to contend that that's an abuse of discretion. And as we point out in our brief, Your Honor, the application of the multiple factors was just simply an abuse of discretion. If I may proceed to the Rooker-Feldman argument, Your Honor. Go right ahead. For Rooker-Feldman, the district court correctly denied the defendant's motion. Under this circuit's precedent, Rooker-Feldman does not bar federal jurisdiction unless five elements are present. None of those elements are present here. First, the district court correctly found that neither Eastgate or Northpointe are state court losers. Eastgate is not a party to the Will County lawsuit. And the district court properly found that defendant's argument that interested parties are proper parties under the Illinois Civil Code of Civil Procedure is just incorrect. The defendants cite a number of Illinois cases for the proposition that an interested party is actually a party. But in each and every one of those cases, the interested party was actually named and sued as a defendant. In fact, if you look at the Illinois Code of Civil Procedure, you won't find a procedure that allows a party to appoint an interested party in the lawsuit. I think there's one case that the defendants cite for the proposition that an interested party can take an appeal of an adverse decision. And that's the Krause decision from 75 years ago. The problem with that authority is that the Krause decision was decided under the Illinois Civil Practice Act. And the Illinois Civil Practice Act was then replaced by the Illinois Code of Civil Procedure. And the provision on which the Krause court relied is no longer present in the Illinois Code of Civil Procedure. North Point also is not a party to the Will County lawsuit, nor did any party attempt to designate it as an interested party. So I think under these circumstances, the Supreme Court's decision in Lance is controlling, because that bars actions by non-parties to the earlier state court judgment. As to the second Rooker element, the district court quickly found that the temporary restraining order is not a final judgment for purposes of Rooker-Feldman. In discussing Rooker-Feldman, the Supreme Court has never mentioned interlocutory orders. It has only invoked the doctrine in the face of final judgments. While the Seventh Circuit's analysis has varied, the decisions in Bryant, Hansi Tanevich, and Kowalski are unanimous. Rooker-Feldman only applies to final judgments. I'm puzzled by this whole argument about Rooker-Feldman in light of Gill Bank, which holds that the Rooker-Feldman doctrine does not apply to a request for damages, and your client is requesting damages. We're also requesting injunctive. I know what you're requesting, but if you request damages, the Rooker-Feldman doctrine doesn't apply. That's the holding of Gill Bank. There may be a dispute about remedies, but there can't be a dispute about jurisdiction in the wake of Gill Bank. So I continue to be puzzled by your argument. You have a one-sentence clear winner on Rooker-Feldman, which you don't appear to be making. Well, there's five factors, Your Honor, and I haven't finished all of them yet. Not after Gill Bank. I agree, Your Honor, and I agree that Gill Bank does not apply to a claim for monetary damages because of the rationale. No, Gill Bank holds that the Rooker-Feldman doctrine doesn't apply to a claim for monetary damages. Yes, and I think the rationale behind that was it does not apply because a claim for damages does not invite the court to review and reject the state court's decision, and so I agree with you on that. The defendants have argued, though, that the Rooker-Feldman applies to all of our claims, both those based on damages and those based on injunctive relief and declaratory relief. Counsel, can I kind of wind back the clock a little bit to your argument with regard to the stay? You know, looking at the stay kind of more broadly outside the context of Colorado River, I take it your argument still is that the district court abused its discretion by staying this case. Is that correct? That's correct. And my question to you is my understanding of the dispute with regard to Section 12.B.3 in the state court action is not that it's void, but it's kind of how broadly it should be interpreted. And so my understanding is that the city believes that that provision should be interpreted to only kick in when the city, for example, changes an ordinance or some sort of rule, public ordinance that governs the weight restriction on those roads. And the plaintiff's argument is no, it really deals with temporary permission to exceed the weight allotment. And my question to you is this. If the court decides in the city's favor, right, would that necessarily dispose of the antitrust case or would the antitrust case still continue based on the argument that even under that interpretation, the provision is an unreasonable restraint on trade? Yeah, Your Honor, it would continue because I think as defendants concede, regardless of how the Will County Court rules, the attempted monopolization claim will continue on. And under this court's decision in Antosh, which I think announced what was the all claims test, the state court decision must have a substantial likelihood of resolving all the claims in the federal case. So because the attempted monopolization claims continue on, abstention or the stay is inappropriate. What about your, aside from the attempted monopolization claim, your claim that just the provision in itself is an unreasonable restraint of trade because it burdens competition under the rule of reason, basically? I think that that's an argument that would continue on as well, Your Honor. Because the, and let me clarify, because the injury itself arises out of the MOU. That's the restraint of trade. Arises out of the what? The memorandum of understanding. If you would use real English words, that would help us. You're welcome. Your comment is well taken, Your Honor. And so the injury arises out of the memorandum of understanding, the contract between the city and HRE. And that in and of itself can cause the injury to the plaintiffs in this case. So the TRO does nothing more than clarifies or crystallize the extent of the injury, but just on simple causation grounds, just the existence of the MOU gives rise to an illegal restraint of trade. If I may just briefly address the Norr-Pennington arguments, Your Honor. Norr-Pennington is intended to immunize petitioning conduct. It does not protect the result of petitioning conduct. It does not prohibit fraudulent representations made to a tribunal or post-petitioning conduct. Freedom Holdings, Sanders, Premier Electric, and Campbell, and the ERETA treatise are all in agreement. Norr-Pennington does not prevent a court from invalidating the result of petitioning and enjoining enforcement if the state action violates antitrust laws and is not otherwise immune. Defendant's position is Norr applies both to petitioning and post-petitioning conduct. The flaw in that logic is pointed out by the Second Circuit's reasoning in the Freedom Holdings case. There the court said that the immunity for advocacy cannot sensibly protect the result of anti-competitive legislation because of the mere fact that otherwise all such legislation would be deemed immunized. And the ERETA treatise took a slightly different take on it, pointing out that one assumes that all legislation is the product of some sort of private interest petitioning. In nearly all such cases, private parties enjoy immunity. But if you find immunity for the operations of the statute that results from the petitioning, you'd simply be eviscerating the state action doctrine and other doctrines of immunity. And I think this court recognized the same in Premier Electric. And it said if interest groups obtain the protection they seek, Parker v. Brown will insulate them from antitrust liability. The Norr doctrine provides that these self-serving groups' protection from application of the antitrust laws to their efforts to obtain the insulation, which I think is completely consistent with Freedom Holdings and also consistent with this court's decision in Campbell, in which the court talked about how Norr applies to the petition of the government and Parker or other immunity doctrines apply to the squelching of competition that results from the government action. And so defendants would argue, well, there's a distinction if it's a private entity or if it's a public entity. If it's private, Norr applies to both facets. And if it's public, Parker and other immunities apply to the results of petitioning. But I think this court's decision in Yuletrek v. Chicago Parking Meters undermines that argument. And if you recall in Yuletrek, the city of Chicago was not sued as a defendant in the case. It was the private party, Chicago Parking Meters. And this court said, we don't draw a line or distinction between who the party is when it's an antitrust case. And we look at the activity and the anti-competitive conduct. And so in that case, even though it was a private party that was the defendant, the court applied Parker to determine whether or not that private party enjoyed immunity. And the court simply said, we don't analyze immunity for post-petitioning conduct under Norr. We analyze it under Parker. And the court, again, noted the fact that it was a private party did not make a difference in its application of Parker to the post-petitioning conduct. Defendants relied primarily on the Third Circuit decision in Bedell and argued that Norr applies across the board to both post-petitioning and petitioning conduct. Because in Bedell, the court was concerned about granting immunity for petitioning conduct, but then finding a private party liable for obtaining the relief that they sought. And so it's sort of an equitable notion here, again, contrary to this circuit's decisions. But even if you accept that as true in this case, again, we aren't seeking just damages. We are seeking the invalidation of the MOU. Of the what? Memorandum of Understanding, Your Honor. And we're seeking the invalidation of that as a restraint of trait. And we are seeking an injunction prohibiting its enforcement. With that, Your Honor, I'll reserve my remaining time for rebuttal. Certainly, counsel. Mr. Feinerman. Good morning. May it please the court, counsel. Judge Easterbrook, you raised a question about appellate jurisdiction, so I'll start there. We would love it if there was no appellate jurisdiction over this case. I'm sure you would. Making it a puzzle why this wasn't a principal subject of your brief. So the district court stay order rested at least according to the terms of the order on the Colorado River Doctrine. Did the district court say the case would never return to district court? No, it didn't. Under Quackenbush, that's the question. Is it coming back to the district court or not? If the answer is not, then we have jurisdiction. If it is, it's a problem. It is. And the reason we said that there was jurisdiction is Laughran, which is this court's decision, I think, from 2021, and Moses Cone, Supreme Court from the 1980s, held that a Colorado River stay and not just a dismissal. As I think is now clear, the question is, is this a Colorado River decision? Or is it a plain vanilla stay in favor of to wait for the outcome of pending state litigation? Right. And that's a question that was raised by this court's decision in GLAB in footnote one, where this court said, we're going to assume it's Colorado River, but it's also possible to view the decision as just an exercise in case management. There are things that need to happen in state court. Here it would be figuring out- And the Supreme Court tells us in Quackenbush that in order to decide appellate jurisdiction, we decide whether this is a case management stay or a Colorado River abstention. Right. Yes. And the district court, again, I wish- said Colorado River, but the question is whether that's correct. Right. The district court was certainly speaking in the vernacular of Colorado River, talked about parallelism, issue parallelism, parity parallelism, the 10 factors. But I agree with you that it is possible, and it would have been within the district court's power, to just simply enter a stay, given the circumstances. I don't see how- Well, as I said to Mr. Palmerstein, we're going to ask for supplemental memos.  We're going to ask both sides to address how the Supreme Court's decision in Quackenbush applies to this appeal. And that obviously entails the question of whether this is a bona fide Colorado River abstention, meaning that the district judge is never coming back to the case, or a case management stay, meaning that the district judge is coming back to the case. Right. And Judge Eastberg, I think the premise of your question is, can there be a Colorado River stay or does Colorado River wipe the district court's hands of the case? And again, I wish I could agree with you, but my understanding is that there are Colorado River dismissals and there are also Colorado River stays. Well, then you need to, the parties need to address whether, if you apply the words Colorado River to a case management stay, it changes the outcome under Quackenbush. That is correct. And again, I was taking- You're taking the district court at its word, which is very strange for a cross-appellant, because you're not taking everything the district judge said at her word. That's right. I think it would have been very cheeky of us to have argued Colorado River in the district court, get a Colorado River order, and then say, oh, by the way, the district judge wasn't, this isn't really a Colorado River. It wouldn't be the first time we've seen cheekiness from appellees or cross-appellants. Right. Well, I mean, given your questions and your concerns, Judge Eastberg, we're certainly willing to, and it sounds like we're going to get the opportunity very soon. Yes, to take another look at it. You will need to. And revisit the issue. So I, this case throws up an array of red flags, even putting aside the appellate jurisdiction red flag, Judge Easterbrook, that you raised. For over two and a half years, there's been pending in state court litigation regarding the weight limit and the truck access issue on Millsdale Road. For two of those years, Eastgate was content to have it litigated in Will County, and it did so alongside Joliet, with which it has a joint defense agreement. And for two years, Northpointe, the other plaintiff here, which controls Eastgate, Eastgate's affairs as its manager, pays Joliet's legal bills, its private counsel. It's not just relying on the corp counsel in Joliet. Hired the Croke Fair child law firm. Northgate, I'm sorry, Northpointe is paying the bills and edits Joliet's state court briefs. They were content as well, until the tide turned and things started going south for them. Third District Appellate Court held that there was a claim stated for violation, for Joliet's violation of Section 12b.3 of the Memorandum of Understanding, and then the Will County Court in March entered a temporary restraining order requiring Joliet to comply with it. And unhappy with this turn, Eastgate and Northpointe filed suit in federal court, complaining that the temporary restraining order is causing it harm and seeking a declaration that Section 12b.3 is unenforceable and seeking an injunction against its enforcement, directly contrary to the temporary restraining order entered by the state court. And it does so on the ground that Centerpointe violated the antitrust laws in two ways. First, by entering into a contract, the Memorandum of Understanding, with not just the City of Joliet, but Will County and the Illinois Department of Transportation. And second, by successfully seeking to enforce that contract in state court. Both of those actions are core protected conduct under the Norr-Pennington Doctrine. And courts are justifiably wary of parties, particularly defendants, coming into court and saying there's several reasons why this case shouldn't be going anywhere. In this instance, it's justified. We have three doctrines, with which you're well familiar, that defeat a case of this nature, Rooker-Feldman, Norr-Pennington, and Colorado River. And because it has the fewest moving parts, and unless the court would like me to start elsewhere, although I already have started with appellate jurisdiction, I'll begin with Norr-Pennington. Unless the court has questions about Colorado River or Rooker-Feldman that it believes are more pressing. Mr. Feynman, the Norr-Pennington Doctrine really goes to the merits, it seems to me, of the antitrust claim, and it's the main argument that you have advanced in your Rule 12b-6 motion. Looking at the district court's order granting the stay and its exercise of jurisdiction, I'm not sure if the district court really considered the merits of the antitrust claim in the district court's determination of whether or not to enter a stay, writ large. And so I guess my question is, why should we? In other words, the district court didn't rule on 12b-6 motion, said it wasn't going to, didn't really address it in its order granting the stay. Number one, assuming we have jurisdiction over the stay order, do we have jurisdiction over the 12b-6? And, you know, why should we take a look at it now? And you raised a jurisdictional question and then a prudential question, and my answer is going to assume that there's 1291 jurisdiction over the district court's order, which I know is up in the air and we'll be briefing that in the next week or so. In terms of jurisdiction, if the district court's order is here under 1291, then all the interlocutory orders that were also entered by the court comes along with it, and that's the owner-operator independent driver case. But the intended orders was not an order granting or denying the 12b-6 motion. It's an order saying, you know what, if I need to, I'll address it later. Right. It technically, I understand your point, Judge Lee. Technically, though, it was a denial without prejudice of the order, and so the district court could have just as easily, instead of going the Colorado River route or the case management route, whatever that may be, the district court also could have addressed our 12b-6 motion and disposed of this case on Noor-Pennington grounds. And then there's also the question of pendant. There's a second jurisdictional hook for Noor-Pennington, again assuming for now, for the moment, that there's 1291 jurisdiction over the district court's order, assuming it's a Colorado River order, and that's the question of pendant appellate jurisdiction. So Colorado River has, there's the Medema case, which says as a general rule, if the federal plaintiff brings a claim over which there's exclusive federal jurisdiction, as a general rule, there can't be a Colorado River stay. There is an exception to that, an express exception to that, providing that if the federal claim is frivolous, then Medema doesn't apply and you can go forward with the Colorado River ruling. So the frivolousness of the federal claim comes in through the 12b-6 motion, and the term that the case is used is inexorably intertwined, and I know that that term has fallen out of favor. That's not a phrase you want to be using much. I know, it's not, and certainly not in the Rooker-Feldman context, but it has not yet been disposed of in the pendant appellate jurisdiction context. The right answer is there is no such thing as pendant appellate jurisdiction. The Supreme Court has said that, and then, of course, in the Clinton case, it in a footnote took pendant appellate jurisdiction of one case after having declared that it doesn't exist, leaving things something, some difficulties for courts of appeals. And also for attorneys. Understandable. But even if pendant appellate jurisdiction doesn't exist, we do have that first avenue for getting to the Norr-Pennington issue. Then the question is, okay, there's jurisdiction, so should the court of appeals, assuming that the case gets remanded, decide Norr-Pennington on its own, or should it kick it back to the district court? And so you mentioned the fact that the Medina case talked about or created an exception to the exception, basically, when a claim is frivolous. I take it that your interpretation of frivolous means non-meritorious as opposed to like the Rule 11 or something without good faith or absolutely no chance in heck that it would go through? Right. And we addressed this in our brief, and we're not making a Rule 11 argument. It's kind of – and we kind of did a little archaeological excavation of the cases that gave rise to what Medina called frivolous, and it seems to be very weak as opposed to frivolous, a clear loser. And that makes sense because why should – a claim shouldn't have to be so bad that it subjects an attorney or a party to sanctions before it is deemed too weak to preclude the application of the Colorado River Doctrine. And I think that's what Medina and the cases that it relied upon were gesturing at. And again, they used the term frivolous, but I think it was using the term loosely as opposed to in the Rule 11 or the Section 1927 sense. So coming back to the question of should this court – let's say the court takes up the appeal. There is, as Judge Easterbrook noted and as we acknowledged, Rooker-Feldman does not apply to Eastgate's damages claim. So should the court address Norr-Pennington? I think the answer to that is yes. Norr-Pennington is an immunity doctrine, and Norr-Pennington presents a pure question of law. Taking a look at the complaint and all the materials that the court is entitled to look at on a 12B6 motion, does Norr-Pennington give Centerpoint and its co-defendants immunity under Norr-Pennington? And the answer to that question is yes. And there are cases that hold that the purpose of immunity is not just to protect a private party from liability, but also to protect the private party from the expense and the time and the effort of litigation. So we think that the court can and should address Norr-Pennington, again, assuming the logically anterior point that Judge Easterbrook raised about appellate jurisdiction is resolved in favor of appellate jurisdiction, which I understand it very well may not be, which again would be a very happy day for our side of the courtroom. So as to Norr-Pennington, again, just going back to what I said a few moments ago, there are two things that Northpoint and Eastgate are complaining about. One is that Centerpoint entered into a contract with government entities, and the second is that Centerpoint went to court and petitioned the court to enforce that contract. Both of those things are core central Norr-Pennington conduct. The question is whether Norr-Pennington does anything for you if the contract itself violates the Sherman Act. Right. And that goes to what's the writ? How far does Norr-Pennington extend? Does it extend solely to petitioning activity? You're asking the government to enter into a contract with you, or does it also? Well, in the Parker v. Brown series of cases, the question the Supreme Court wants asked is whether the government itself has compelled an end to competition in a way that the government supervises. Now, if you petition for something else that doesn't meet that standard and you get it, does that trump the outcome of all the Parker v. Brown cases? It doesn't trump the outcome, but it's asking a different question because you'll notice on our side of the courtroom there are just private parties. There isn't Joliet, there isn't Will County, there isn't the Illinois Department of Transportation. And that's why I'm going to refer to the Freedom Holdings case that the Second Circuit decided. And that case was brought by private parties against the Attorney General of New York, Eliot Spitzer at the time, and a state agency. And in that context, where you're actually suing the government officials, Parker comes into play. And a party that is challenging the contract can get the contract invalidated if Parker immunity doesn't apply. But what Norr Pennington does not allow, and what this court's decision in Campbell and alarm detection systems and the Ninth Circuit in Sanders and the Fifth Circuit in Greenwood and the Third Circuit in A.D. Biddell hold, is that you cannot, consistent with Norr Pennington, bring a suit against a private party, argue that the contract itself violated the antitrust laws and get relief through the claim against a private party. Why not? If a private party enters into a cartel agreement, which is how the plaintiffs want this characterized, how can the fact that the private party was entitled to ask the municipality for this illegal agreement provided any support? It's a party to the supposedly illegal agreement. Why can't it be liable for its role as a party to a cartel agreement? It could be liable as a party to a cartel agreement. Now, that's how the plaintiffs want to characterize this. Now, maybe they're wrong, but I don't see how Norr Pennington can protect someone who is sued as a party to a cartel agreement. Right. It's not a cartel agreement because the private party... I understand that that's your position. Let me explain why. But it's not the plaintiff's position. I understand, and the plaintiffs are wrong. It would be a cartel agreement if an agreement were with another private party, but this agreement is with three government entities, the state, the county, and the city, and it was obtained by petitioning the government. And this argument has been made and it's been rejected time and time again by this court in Campbell in alarm detection systems, in Sanders v. Brown, in Greenwood, and A.D. Bedell. When you ask the government for something and the government gives it to you, in this instance a contract, that's Norr Pennington. And it's not just the petitioning that is protected, it's the actual result. Do you have any Supreme Court authority for that description of Norr Pennington as protecting anything other than the petitioning? Not at the moment, no Supreme Court, but... I am pretty sure there is none. Right. But we do have all those Court of Appeals decisions, including decisions from this court. I see my time is up. Does the court have any further questions? No, thank you. Thank you. Anything further, Mr. Palmashod? Just to respond to Mr. Finer's points about whether or not the case is frivolous, that's a very, very limited exception to Medema. And I think as it was applied in Calvert 4, the plaintiff admitted that the claim that the plaintiff brought was a frivolous one. And obviously we disagree. I also point out that we did file a motion for preliminary injunction not long after we filed the complaint. And the district court, by staying the case, has effectively denied that motion for preliminary injunction, which we think is just an additional grounds for jurisdiction on this appeal. Thank you. All right. Thank you very much, counsel. The court directs the parties to file supplemental memos addressing appellate jurisdiction within 14 days. The memos have to take up at least two questions. One is how the Supreme Court's decision in Quackenbush against Allstate applies to this dispute. And the second is whether the district court's reference to Colorado River extension is a misnomer. When those memos have been received, the case will be taken under advisement.